IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
AT BIG STONE GAP

PHYLLIS WILSON,                 )
                                       )
                    Plaintiff,         )
                                       )
vs.                              )        No. 2:11-CV-00028 JPJ/PMS
                                       )
SHAW CONSTRUCTORS, INC.,   )
                                       )
               Defendant.      )

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Comes now the Defendant, Shaw Constructors, Inc. ("Shaw"), and respectfully submits the following Memorandum of Law in support of its Motion for Summary Judgment.

## I. INTRODUCTION

Shaw is entitled to a judgment as a matter of law with respect to Plaintiff's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Virginia Human Rights Act, Virginia Code § 2.2-3900, *et al.* ("VHRA") because Plaintiff cannot establish a *prima facie* case of sex discrimination. Moreover, even assuming that Plaintiff could establish a *prima facie* case of discrimination, the undisputed facts in this matter demonstrate that Shaw's employment decisions related to Plaintiff were based on legitimate, non-pretextual reasons. Accordingly, Plaintiff cannot establish her claims of unlawful discrimination, and, based on the undisputed materials facts in this case, Plaintiff's claims should be dismissed with prejudice.

J M-D 130254 v1
0-0  08/30/2012

## II. <u>STATEMENT OF UNDISPUTED MATERIAL FACTS</u>

### A. <u>Plaintiff's Employment By Shaw</u>

Among other things, Shaw provides services for engineering, procurement and construction ("EPC") and design-build projects, primarily for the energy, chemical, environmental, infrastructure and emergency response industries. Affidavit of James Lott[1] (hereinafter the "Lott Aff."), ¶ 3. Shaw performed EPC services during the completion and start-up of Dominion Virginia Power's 585-megawatt Virginia City Hybrid Energy Center located in St. Paul, Virginia. *Id.* Shaw employs more than 15 persons. *Id.*

Plaintiff's claims in this case arise out of her employment by Shaw at the Dominion Virginia Power project in St. Paul, Virginia. *See* Amended Complaint, Dkt. # 3 (hereinafter the "Compl.") Plaintiff was hired by Shaw as a "helper" in St. Paul on May 24, 2010. Lott Aff., ¶ 4. Plaintiff, however, held this position for less than three months before her employment was terminated on August 5, 2010 for violation of Company policy - providing misinformation on her employment application. *Id.*

The "helper" position Plaintiff held in St. Paul is paid based upon grade level. Lott Aff., ¶ 5. The grade levels of a "helper" range from "helper 1" or "bottom helper" through "helper 5" or "top helper." *Id.* Each person is hired into a particular level for the helper position based on the particular needs of the project at the time of hire and the relevant experience of the employee. *Id.* Hired employees then have the opportunity to progress through the grade levels of the position with their continued experience at the project location. *Id.*

---

[1] The sworn Affidavit of James Lott dated August 30, 2012 is attached as "Exhibit A" to Shaw's Motion for Summary Judgment, which is filed simultaneously herewith.

J M-D 130254 v1
0-0  08/30/2012

Plaintiff was hired by Shaw in St. Paul to fill a "helper 2" position, and she remained at that level until her position was terminated. Lott Aff., ¶ 6. According to Plaintiff's own account, after she first inquired about employment with Shaw in St. Paul, she was plainly informed that the open helper position at the St. Paul project paid less than the last position she had held with Shaw on another project out of state.[2] Deposition of Plaintiff[3] (hereinafter "Pltf. Depo."), 85. Plaintiff specifically acknowledged her understanding that she was being hired in St. Paul as a "helper 2," at the commensurate hourly pay rate of $13.80, when she signed her orientation information form. *See* Lott Aff., ¶ 6. Plaintiff was not approved for a raise during the short period of time she worked in St. Paul. Lott Aff., ¶ 6. No Shaw employee would have any authority to promise Plaintiff (or any other employee) an increase in grade level or more pay without approval from the human resources group. *Id.*

## B.    Plaintiff's termination

Shaw has a very strict policy that governs the hiring of applicants who have relatives working at a project location. Lott Aff., ¶ 7. Any such relationship must be disclosed during the application process. *Id.* In fact, Shaw's application for employment asks very plainly if the applicant has any relatives employed by Shaw. *Id.* On the face of the application, the term "relative" is broadly defined to include many types of close relationships that may not otherwise constitute a "blood" or "legal" relative. *Id.* For instance, persons living in the same household

---

[2] Shaw has employed Plaintiff on three separate occasions at three separate project locations. *See* Pltf. Depo., pp. 70-80. Plaintiff first worked for Shaw in early 2007 at its project location in Blues Creek North Carolina. Plaintiff worked at this location as a "helper" in the Millwright crew until the relevant work on that project concluded. Pltf. Depo., pp. 70-73. Plaintiff next worked for Shaw at its Chalk Point, Maryland project location in 2008-2009. Pltf. Depo., pp. 75-76. Again, Plaintiff worked as a helper in Chalk Point until the relevant work ended; however, she worked in the preventative maintenance (PM) crew at the Chalk Point project. Pltf. Depo., pp. 75-76. Finally, Plaintiff began her most recent employment with Shaw at its project in St. Paul, Virginia in May 2010, also as a helper in the PM crew. Compl., ¶ 5; Pltf. Depo., p. 80.

[3] A true and correct copy of the deposition of Plaintiff as taken on April 24, 2012 is attached as "Exhibit B" to Shaw's Motion for Summary Judgment, which is filed simultaneously herewith.

are deemed to be "relatives" for purposes of the application question, whether or not they are related by blood or marriage. *Id.*

A few days prior to August 5, 2010, James Lott, Shaw's Human Resources Manager for the St. Paul project, received two separate anonymous phone calls indicating that Plaintiff was married to another employee at the St. Paul location, George Gorsky. Lott Aff., ¶ 8. Mr. Gorsky was working at the site as a General Foreman for the Millwright crew when Plaintiff was hired. *Id.* After receiving the anonymous phone calls, Mr. Lott pulled Plaintiff's file to determine whether she had disclosed any relationship with Mr. Gorsky on her application for employment. Lott Aff., ¶ 9. She had not. *Id.* In fact, Plaintiff specifically answered "no" to the question on her application asking whether she had any relatives that worked for Shaw.[4] *Id.* Mr. Lott also discovered at this time that Plaintiff was further dishonest on her pre-employment paperwork by listing Billie Lane, Mr. Gorsky's mother, as her aunt on the general information form that she completed.[5] *Id.*

Mr. Lott also pulled Mr. Gorsky's application and other pre-employment documents to see if they might enlighten him regarding any relationship between Plaintiff and Mr. Gorsky. *Id.* Upon his review of Mr. Gorsky's application and personal & emergency information form[6], Mr. Lott saw that Mr. Gorsky had listed the Plaintiff as his emergency contact, with his own home address and phone number matching Plaintiff's address and phone number. *Id.* Mr. Lott then noticed that the home phone number provided on Plaintiff's application matched the home phone number that Mr. Gorsky provided on his application. *Id.*

---

[4] Before she was hired, Plaintiff completed the Craft Application for Employment and the general information sheet attached as "Exhibit 1" to the Affidavit of James Lott. Lott Aff., ¶ 4, Exhibit 1.

[5] This form is attached as part of "Exhibit 1" to the Affidavit of James Lott. Lott Aff., ¶ 15.

[6] This form is attached as "Exhibit 3" to the Affidavit of James Lott. Lott Aff., ¶ 9.

4

From a review of these documents, Mr. Lott concluded that Plaintiff had a relationship with Mr. Gorsky that should have been disclosed as a "relative" on her application for employment, as that term is so broadly defined.[7]  Lott Aff., ¶ 10.  Based on what he believed to be Plaintiff's false answer on her application, Mr. Lott recommended, and corporate HR approved, that Plaintiff's employment be terminated.  *Id.*  Accordingly, on August 5, 2010, Mr. Lott called Plaintiff and her supervisor into his office and told Plaintiff that she was being terminated for providing misinformation on her application.  Lott Aff. ¶ 11.  Specifically, Plaintiff violated company policy by representing that she had no relatives working for Shaw, despite her obvious relationship with Mr. Gorsky.  *Id.*  Plaintiff admitted that she had previously been married to Mr. Gorsky, but claimed that the marriage was annulled.  *Id.*  This information only confirmed in Mr. Lott's mind that a relative relationship, as broadly defined on the employment application, existed.  *Id.*  Mr. Lott again reiterated that Plaintiff's employment was being terminated and she left the premises without incident.  *Id.*

Plaintiff's employment with Shaw was terminated because Mr. Lott legitimately believed that Plaintiff violated Company policy by indicating on her application that she had no relatives working for Shaw.  Lott Aff., ¶ 12.  This reason was consistently communicated to Plaintiff by Shaw during the meeting described above and in the Separation Notice.[8]  *Id.*  Mr. Lott's decision to terminate Plaintiff's employment was solely based on the dishonesty she displayed on her pre-employment paperwork and had absolutely nothing to do with her gender.  Lott Aff., ¶ 13.  If Shaw did not want to employ Plaintiff because of her gender, it would have never hired her for

---

[7] While Mr. Gorsky also answered "no" to the same question regarding relatives on his application, he was hired four months prior to Ms. Wilson; therefore, his answer was not false because Plaintiff was not working for Shaw at the time he completed the application.  Lott Aff., ¶ 10.

[8] The Separation Notice is attached as "Exhibit 4" to the Affidavit of James Lott.  Lott Aff., ¶ 12.

the position less than three months prior.  *Id.*  Notably, Plaintiff's position was not backfilled after her separation.  Lott Aff., ¶ 12.

Mr. Lott has consistently recommended termination in all situations where he has concluded that any employee, male or female, has been dishonest on an employment application or other company documentation.  Lott Aff., ¶ 14.  Mr. Lott is not aware of any employee working for Shaw who failed to disclose an existing relative relationship when he or she completed his or her employment application.  *Id.*  When Mr. Lott has been made aware of any such person, he or she has been discharged the same as Plaintiff.  *Id.*

## III.  <u>LEGAL STANDARD</u>

A motion for summary judgment should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Fed. R. Civ. P. 56(c)*.  The substantive law of the cause of action determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A dispute about material facts exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).

The Supreme Court has instructed that summary judgment should be granted where the movant points to the absence of any factual support for an essential element of a plaintiff's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); 11 James Wm. Moore et al.,

J M-D 130254 v1
0-0  08/30/2012

*Moore's Federal Practice* § 56.03[5] (3d ed. 1999). However, the "mere . . . scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which [a] jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986)). Thus, this Court must consider the Plaintiff's burden of persuasion at trial and determine whether the Plaintiff has proffered sufficient evidence in opposition to the summary judgment motion to meet Plaintiff's burden at trial. *Liberty Lobby*, 477 U.S. at 250-53; 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.03[4] (3d ed. 1999).

In the employment discrimination context, "a subjective belief of discrimination, however genuine, cannot be the basis of judicial relief." *Moore v. Reese*, 817 F. Supp. 1290 (D. MD 1993) (citation omitted). Therefore, courts in the Fourth Circuit have often granted summary judgment to the defendant employer in discrimination cases in which the plaintiff disputes the employer's motives but offers no material facts in support of the argument. *Mitchell v. Data General Corp.*, 12 F. 3d 1310, 1318 (4th Cir. 1993) (affirming summary judgment for defendant on grounds that appellant failed to establish a *prima facie* case of age discrimination, and failed to establish a genuine issue of material fact in connection with the employer's legitimate, non-discriminatory reason for its actions); *Goldberg v. Green*, 836 F.2d 845, 848 (4th Cir. 1998) (plaintiff's assertions about employer's state of mind and motivation not sufficient to withstand summary judgment).

J M-D 130254 v1
0-0  08/30/2012

# IV. ARGUMENT

Plaintiff's claims of sex discrimination are presented under Title VII and the VHRA. *See* Compl. Of course, Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or provileges of employment, because of such individual's . . . sex." *See* 42 U.S.C. § 2000e-2(a). In this case, Plaintiff has asserted that she was subjected to illegal discrimination based on her sex with regard to her pay and with regard to her separation from Shaw. *See* Compl. However, the undisputed material facts demonstrate that Plaintiff cannot meet her required burdens for establishing claims of sex discrimination under Title VII. Moreover, because the VHRA applies only to employers with more than five, but less than fifteen employees, it is completely inapplicable to this case. Virginia Code § 2.2-3903(A) and (B).

## A.   Plaintiff's Claims of Discrimination under Title VII

There are two methods for proving illegal discrimination in employment under Title VII: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden-shifting scheme set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). In order to succeed under the first method of "direct or indirect" proof of discriminatory intent, a plaintiff must offer "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Brinkley v. Harbour Rec. Club*, 180 F.3d 598, 607 (citing *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995)). As in this case, when the plaintiff lacks any such direct or indirect evidence, she may proceed under *McDonnell Douglas. See also Rhoads v. F.D.I.C.*, 257 F.3d 373, 391 (4th Cir. 2001), *cert. denied*, 535 U.S. 933, 122 S. Ct. 1309, 152 L. Ed. 2d 219 (2002).

J M-D 130254 v1
0-0  08/30/2012

Under the *McDonnell Douglas* framework for showing discrimination through circumstantial evidence, a plaintiff first must establish a *prima facie* case of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802. To establish a *prima facie* case of discrimination, the plaintiff must show that: 1) plaintiff is a member of a protected class; 2) plaintiff was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; 3) plaintiff suffered an adverse employment action; and 4) other similarly situated employees outside the protected class were treated more favorably. *See Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 285 (4th Cir. 2004)(*en banc*).

Once a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action alleged. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (citing *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)).  If the defendant succeeds in doing so, it will rebut the presumption of discrimination raised by the plaintiff's *prima facie* case. *See Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000) (citing *Burdine*, 450 U.S. at 255, n.10).  The plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253. In the end, "[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (citing *Burdine*, 450 U.S. at 253).

J M-D 130254 v1
0-0  08/30/2012

1. **Plaintiff's claims of alleged wage discrimination fail.**

   a. ***Plaintiff cannot establish a prima facie case of sex discrimination with regard to her wages.***

Plaintiff first attempts to assert a claim for wage discrimination by claiming that Shaw refused to pay Plaintiff journeyman wages while hiring inexperienced males and paying them as journeymen. Compl., ¶ 10. In order to establish a *prima facie* case of discrimination on this basis, Plaintiff must provide proof of specific comparators. *Brinkley-Obu v. Hughes Training*, 36 F.3d 336, 343 (4th Cir. 1994). However, when asked in her deposition what "inexperienced" male employees Plaintiff refers to in her Amended Complaint, Plaintiff was unable to point to any admissible evidence to support her blanket allegation.[9] *See* Pltf. Depo., pp. 169-172. In fact, Plaintiff readily admitted that she actually had no idea what other male employees' actual past experience might be:

Q:    Right. But I'm asking about past experience. Do you know what - -

A:    Well, nobody knows what anybody's past experience is. You could sit there and tell you you were anything.

Q:    Uh-huh (affirmative).

A:    They don't - - they don't - - they don't go around telling people - -

Q:    All right.

A:    - - what their past experience is.

Q:    So you didn't know what the other males' past experience was?

A:    No.

---

[9] Plaintiff could only state that one male employee told her that he had previously worked in the fast food industry. *See* Pltf. Depo., pp. 169-172. In assessing a summary judgment motion, a court is entitled to consider only the evidence that would be admissible at trial. *See Maryland Highways Contractors Ass'n, Inc. v. State of Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991) (noting that "hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment").

Pltf. Depo., 171.

Similarly, Plaintiff has admitted that she has no admissible evidence to support her contention that men were given journeyman status before women. *See* Compl., ¶ 11. Specifically, Plaintiff has testified as follows:

> Q:    Okay.   In Number 11, it says men employed by Shaw were given journeyman status sooner than women.   Specifically, what men are you referring to and what women?
>
> A:    Okay.   That right there, I won't be able to say just for one person that I know that I've worked with, but Mr. Gorsky is the one that knows all the facts about all of this because he was in managment.   He knows -- he knows more than I do.
>
> Q:    Okay.   So who were the men that you're referring to, and who are the women that you were referring to?   It's your Complaint, right?
>
> A:    The women, I'm not aware of.  . . .

Pltf. Depo., 176-177.

"Under Title VII, a *prima facie* case of sex discrimination requires showing a connection between sex and the adverse employment decision." *Brinkley-Obu v. Hughes Training*, 36 F.3d 336, 343 (4th Cir. 1994).   In this case, Plaintiff has blindly accused Shaw of discriminating against her because of her sex with regard to her pay.   However, given Plaintiff's own testimony, wherein she admits that she knows of no specific comparators, it is clear that she cannot meet her burden of establishing a *prima facie* case of wage discrimination.

###    b.    *Plaintiff cannot prove that Shaw's legitimate reason for its pay decision is pretext for discrimination.*

Even if Plaintiff could establish a *prima facie* case of wage discrimination, her claim would still fail because she cannot offer proof to demonstrate that Shaw's legitimate reason for its pay decision is pretext for discrimination.   Plaintiff's placement into a "helper 2" position, as opposed to some higher level position, had nothing whatsoever to do with her gender.   Lott Aff.,

¶ 6. Instead, just as all other employees, Plaintiff was hired into an available position based on the particular needs of the project at the time of hire together with her relevant experience. *Id.* Plaintiff specifically acknowledged her understanding that she was hired as a "helper 2," as well as the commensurate hourly pay rate of $13.80, when she signed her orientation information form. *See* Lott Aff., ¶ 6,"Exhibit 2." Furthermore, Plaintiff admits that she was plainly informed that the open helper position at the St. Paul project paid less than the job she had previously held for Shaw. Pltf. Depo., 85. Understandably, Plaintiff was not approved for a raise during the time she worked in St. Paul, given that period of time was *less than three months. Id.*

"Once the defendant offers a non-discriminatory justification for the wage differential, the burden of persuasion remains on the plaintiff to demonstrate that the proffered explanation is pretextual and that the defendant was actually motivated by discriminatory intent." *Brinkley-Obu*, 36 F.3d at 344 (*citing Burdine*, 450 U.S. at 253). In order to prove an intent to discriminate, the Plaintiff must do more than merely show unequal pay periods. *Gustin v. West Virginia Univ.*, 63 Fed. Appx. 695, 699 (4th Cir. 2003). In *Reeves*, the Supreme Court articulated a very high standard for establishing pretext:

> The ultimate question is whether the employer intentionally discriminated, and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . .is correct.

*Reeves,* 530 U.S. at 147 (quoting *St. Mary's Honor Center*, 509 U.S. at 524 (emphasis added). "In other words, '[i]t is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Id.*

Plaintiff has absolutely no evidence to refute Shaw's legitimate non-discriminatory reason for its decisions regarding her pay, much less convince a factfinder that the real reason for

Shaw's pay decision was discriminatory. Accordingly, Plaintiff's wage discrimination claim must fail.

## 2. Plaintiff's claim of discrimination related to her termination fails.

### a. Plaintiff cannot establish a prima facie case of sex discrimination with regard to her termination.

As indicated above, in order to establish the fourth element of a *prima facie* case under *McDonnell Douglas*, Plaintiff must offer proof that other similarly situated male employees were treated more favorably than her. *See Hill*, 354 F.3d at 285. Plaintiff alleges that she was "treated differently than Mr. Gorsky because of her sex" and that "Mr. Gorsky was not accused of lying and was not discharged." Compl., ¶ 24. Plaintiff testified that this, in fact, is the entire basis of Plaintiff's belief that she was fired because she is a female.[10] After admitting that Mr. Lott truly believed that she had falsified her application by failing to disclose Mr. Gorsky as a relative, Plaintiff testified as follows:

> Q: Okay, but you also just testified you think it's because you're a woman. That you're a female.
>
> A: Well, it was. I was fired for another male's application and two anonymous calls. George Gorsky was never brought up to HR. George Gorsky was never confirmed - - got talked to about the application.
>
> . . .
>
> Q: So but - - but Mr. Gorsky wasn't fired?

---

[10] In her Amended Complaint, Plaintiff also concludes that Shaw "discriminatorily discharged Plaintiff so it would not have to pay her the higher rate of pay of a journeyman." Compl., ¶ 25. Plaintiff however, testified as follows regarding this allegation:

Q: It says Defendants discharged you so you would - - This is Paragraph 25. I'm sorry. Discharged you so you wouldn't have to pay - - they wouldn't have to pay you a higher rate of a journeyman. What proof do you have of that?

A: I have no proof of that.

Pltf. Depo., 191.

A:       Exact - - Yes, sir.

Q:       So you think you must have been fired because you're a female, he's a male. He got to keep his job. Is that right?

A:       Yes, sir.

Q:       Okay. Is that - -

A:       He's - -

Q:       - - basically the basis of your whole claim? I mean, is it - - that your understanding of your basis for believing that you were terminated? Because you're female?

        . . .

A:       I feel that I was fired because I was a female, yes.

Q:       Yeah. And is the basis for that feeling, for your belief of that, is that based on what you just told me?

A:       Yes, sir.

Pltf. Depo., 141-143.

        Plaintiff is correct that Mr. Gorsky was not accused of lying on his application and was not discharged. However, the undisputed evidence demonstrates that Mr. Gorsky was not "similarly situated" to Plaintiff. Plaintiff has admitted that she was terminated because Mr. Lott believed that Plaintiff lied on her application when she failed to indicate she had a relative working for Shaw since Mr. Gorsky was, at the time of Plaintiff's application, employed by Shaw. *See* Pltf. Depo., 191. Mr. Gorsky also did not disclose a relationship with Plaintiff on his application, but there is an important fact that differentiates the two situations. When Mr. Gorsky completed his application, *Plaintiff was not employed by Shaw*. Lott Aff., ¶ 10; Plaintiff acknowledged this critical distinction as follows:

Q: Okay. Well, assuming he did check no, that is before you went to work for Shaw, correct?

A: Correct.

Q: He filled out his application before you went to work for Shaw?

A: Correct.

Q: Okay. So regardless of what kind of relationship you all had, even if you did have some physical or emotional relatinship or you were living together or what have you, since you weren't working, his answer no would have been absolutely correct?

A: Correct.

Pltf. Depo., 190-191. Accordingly, Mr. Lott had no reason to believe that Mr. Gorsky made any misrepresentation on his application.

Additionally, the undisputed evidence indicates that Plaintiff was not replaced by someone outside of her protected class. In fact, Plaintiff's position was not backfilled after she was terminated. Lott Aff., ¶ 12. Despite the assertions in Plaintiff's Amended Complaint indicating that she was replaced by two male workers, Plaintiff testified that she has no proof to support that assumption.

Q: So it's your assumption that they were hired in to do the work that you were doing?

A: Yes, sir.

Q: Okay. Do you have any proof of that?

A: No, just what I've been told by James Roberts that when they were hired in, that they took over doing what I did.

Q: Do you know what else they might have done.

A: No, sir.

Pltf. Depo., 191-192.

Finally, while Plaintiff's Complaint alleges that no male employee has been discharged by Shaw because of a real or imagined relationship with a woman (Compl., ¶ 22), *Plaintiff was not fired for having a relationship with Mr. Gorsky. Plaintiff was fired because Mr. Lott believed that she had lied about a relationship with Mr. Gorsky, a Shaw employee, when she answered on her employment application that she had no relatives employed by Shaw.* See Lott Aff. ¶¶ 12, 13. Mr. Lott has testified that he has consistently recommended termination in all situations where he has concluded that an employee, male or female, has been dishonest on an employment application or other company documentation. Lott Aff. ¶ 14. Mr. Lott further testified that there are no employees working at the St. Paul location that Mr. Lott knows of who failed to disclose an existing relative relationship when they completed their employment application. *Id.* When Mr. Lott has been made aware of any such person, they have been discharged just the same as Plaintiff. *Id.*

Given the undisputed material facts, including Plaintiff's own deposition testimony, it is abundantly clear that Plaintiff cannot demonstrate that any similarly situated male employee was treated more favorably than Plaintiff when it comes to her termination. Accordingly, Plaintiff cannot establish a *prima facie* case of sex discrimination arising out of her discharge by Shaw.

### b. *Plaintiff cannot prove that Shaw's legitimate reason for her termination is pretext for discrimination.*

As indicated above, Plaintiff's termination had absolutely nothing to do with her gender. Lott Aff., ¶¶ 12, 13. Instead, Plaintiff was fired because Jim Lott truly believed that she had lied when she answered on her employment application that she had no relatives employed by Shaw. *Id*. Because Shaw has provided this "legitimate nondiscriminatory reason for its decision[s], [P]laintiff must come forward with sufficient evidence from which a rational factfinder could

J M-D 130254 v1
0-0  08/30/2012

conclude that the proffered reason was a pretext (i.e., a sham) designed to mark . . . [sex] discrimination." *Tarver v. Winter*, 535 F. Supp. 2d 565, 570 (E.D.N.C. 2008).

Plaintiff can present no evidence to demonstrate that Shaw's reason for her termination is pretext. Quite to the contrary, Plaintiff actually testified that she believes that Mr. Lott terminated her employment because of the answer she put on her application, just as Mr. Lott has testified.

Q:      Did you think Jim Lott believed you were in violation of the policy?

A:      I - - I don't know what he believed. He had to have believed it because he fired me.

Q:      Okay.

A:      And I was fired because I was a female.

Q:      Well, what gives you that impression?

A:      Because they fired me for what George Gorsky put on his application. He stayed there two years after I was fired.

Q:      Well, didn't they tell you that they fired you for falsifying you application?

A:      Yes, because I was - - because I marked not married.

Q:      Okay.

A:      I marked - - because I didn't mark relatives or a spouse on the job.

Q:      Uh-huh (affirmative).

A:      And, in fact, I did. Gegorge Gorsky was my husband.

Q:      According to them?

A:      According to them.

Q:      And you - - you think they believed that?

A:      Yes, sir. That's why I got fired.

Pltf. Depo., 140-141.  While Plaintiff also stated her opinion that she was fired because she is a female, this unfounded opinion is not enough to get past summary judgment.  As with the *prima facie* case, a plaintiff's subjective belief that an employer "treated her differently and ultimately terminated her employment due to her sex is not sufficient to create a genuine issue of material fact."  *Haley v. Wal-Mart Stores East, L.P.*, No. 07-219, 2008 U.S. Dist. LEXIS 95322, *5-6 (E.D.N.C. Nov. 17, 2008).

Plaintiff agrees that Mr. Lott believed that she violated company policy.  She simply insists that Mr. Lott was wrong in his conclusion that she provided misinformation on the application.  Therefore, according to the Plaintiff, the real reason for her termination "must have been" her gender.  Plaintiff specifically testified as follows:

> Q:     Okay.  So you - - you'd agree, then that Mr. Lott was just wrong about his belief?  He was just wrong in his belief that you were married, and his reason for firing you?  He was just wrong?  Made a mistake?
>
> A:     Yes, sir.
>
>        . . .
>
> Q:     But you've already testified that you thought he believed that you were married, right?
>
> A:     Yes, he had two anonymous calls, and he told me that - -
>
> Q:     And based on - -
>
> A:     - - he believes that he - - based on George's application as me as an emergency contact, - -
>
> Q:     Uh-huh (affirmative).
>
> A:     - - that I falsified my application, and I was married.
>
> Q:     And he was just wrong about that?
>
> A:     Yes, sir.

Pltf. Depo., 144-146.

In a discriminatory discharge case such as the one at bar, the Court must look at the facts as they appeared to the person making the decision to discipline. *See Hill,* 354 F.3d at 285 (4th Cir. 2004). *See also Gibson v. Fluor Daniel Servs. Corp.*, 281 Fed. Appx. 177, 179 (4th Cir. 2008) ("an employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct") (citing references omitted). "[T]he Court's focus must be on the decision-maker's perception, namely whether the decision-maker's belief in its stated reason was credible. . . . if an employer has a good faith belief in its proffered reason, a plaintiff has not established discrimination simply by showing that the employer was factually incorrect." *Bonds v. Leavitt*, No. 07-2426, 647 F. Supp. 2d 541, 2009 U.S. Dist. LEXIS 72287 *42 (D. Md. Aug. 13, 2009); *see also Price v. Thompson*, 380 F.3d 209, 217 (4th Cir. 2004) (affirming summary judgment where finding employee could not show pretext on two of the employer's rationales for termination, even where employee showed employer had relied on two inaccuracies in the firing as to the other rationales). Indeed, the Fourth Circuit Court of Appeals has specifically stated as follows:

> While reviewing the employer's articulated reasons for discharge and the plaintiff's refutation thereof, we must keep in mind that "Title VII is not a vehicle for substituting the judgment of a court for that of the employer." 57 F.3d at 377. Particularly, this Court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination. . . " *Giannopoulos v. Brach & Brock Confections, Inc.,* 109 F. 3d 406, 410 (7th Cir. 1997) (quotations and citations omitted). *See also EEOC v. Clay Printing, Inc.*, 955 F.2d 936, 946 (4th Cir. 1992). Our sole concern is "whether the reason for which the defendant discharged the plaintiff was discriminatory. Thus, when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *Giannopoulos*, 109 F.3d at 410-411.

*Dejarnette v. Corning, Inc.*, 133 F.3d 293 (4th Cir. 1998).

J M-D 130254 v1
0-0  08/30/2012

The undisputed material facts in this case, including Plaintiff's own testimony, demonstrate that Mr. Lott believed Plaintiff violated company policy, and Shaw fired her for that violation. Whether Mr. Lott was correct in his conclusion regarding the policy violation is not for a court to decide. Rather, since Plaintiff can provide no evidence other than her own subjective beliefs to indicate that this is not the real reason for her termination, she cannot establish her claim for sex discrimination related to her termination.

**B.     Virginia Human Rights Act.**

Plaintiff also summarily asserts her same claims pursuant to Va. Code Ann. § 2.2-3901. Compl., ¶ 28. The VHRA states that it is the policy of the Commonwealth to safeguard all individuals from, among other things, unlawful discrimination because of sex. Va. Code Ann. § 2.2-3900(B)(1). However, the VHRA does not create an independent or private cause of action, except for claims that arise against employers who employ between five and fifteen employees. Va. Code Ann. § 2.2-3903(A) and (B); *see also Wells v. Bae Systems Norfolk Ship Repair*, 483 F. Supp. 2d 496 (E.D. Va. 2007) (noting that the VHRA does not ceate any new causes of action, but applies where a violation of existing law is found).

Here, similar to the case in *Wells*, Plaintiff's VHRA claim fails as a matter of law. The VHRA does not create an independent cause of action against Shaw, who maintains fifteen or more employees on its payroll. *See id.*; Lott Aff., ¶ 3 (indicating that Shaw employs over 15 employees). Furthermore, because all of Plaintiff's discrimination claims fail, Plaintiff cannot establish that she was subject to unlawful discrimination on the basis of sex under the Virginia Code. *See* Va. Code Ann. § 2.2-3901 (noting that "[c]onduct that violates any Virginia or federal statute or regulation governing discrimination on the basis of. . sex. . . shall be an 'unlawful

J M-D 130254 v1
0-0  08/30/2012

discriminatory practice' for the purposes of" the VHRA).  Accordingly, Plaintiff's claims under the VHRA must also fail.

## V. <u>CONCLUSION</u>

As set out above, Plaintiff cannot establish a *prima facie* case of gender discrimination under Title VII related to her employment with Shaw.  Moreover, Shaw's employment decisions related to Plaintiff were based on legitimate, non-pretextual business reasons, and as such, do not constitute violations of Title VII.  Furthermore, the VHRA is completely inapplicable to Plaintiff's employment with Shaw because Shaw employees more than fifteen employees.  Accordingly, Shaw respectfully submits that all of Plaintiff's claims fail as a matter of law and requests that this Court grant summary judgment in its favor and dismiss Plaintiff's Amended Complaint with prejudice.

Respectfully Submitted,


<u>/s/ Matthew D. Davison, Esq.</u>
Matthew D. Davison, Esq., Va. # 44826
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, PC
100 Med Tech Parkway, Suite 200
P.O. Box 3038
Johnson City, Tennessee 37602
(423) 928-0181

*Attorney for Defendant Shaw Constructors, Inc.*

J M-D 130254 v1
0-0  08/30/2012

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 4, 2012, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

This 4th day of September, 2012.

<u>/s/ Matthew D. Davison</u>
Attorney

J M-D 130254 v1
0-0  08/30/2012