IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | |
|---|---|
| **PHYLLIS WILSON,** ) | |
| ) | |
| Plaintiff, ) | Case No. 2:11CV00028 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| **SHAW CONSTRUCTORS, INC.,** ) | By: James P. Jones |
| ) | United States District Judge |
| Defendant. ) | |

*Phyllis Wilson, Pro Se Plaintiff; Matthew D. Davidson, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Johnson City, Tennessee, for Defendant.*

In this employment discrimination case, I grant summary judgment in favor of the employer.

I

The plaintiff, Phyllis Wilson, alleges that her former employer, defendant Shaw Constructors, Inc. ("Shaw"), terminated her from her job as a "helper" at a construction site in St. Paul, Virginia, because she is a woman. She further claims that Shaw committed sex-based wage discrimination. Wilson asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. §§2000e to 2000e-17 (West 2012), and the Virginia Human Rights Act ("VHRA"), Va. Code Ann. §§ 2.1–714 to 725 (Lexis 2011). Shaw denies that it discriminated against

Wilson with respect to her wages and asserts that it fired her not because of her gender, but because it believed that she had violated company policy by lying on her employment application.

Shaw has moved for summary judgment, arguing that the undisputed facts show that Wilson cannot meet her burden of proving sex-based discrimination. Wilson has not responded to Shaw's motion.[1]  Based on the record before me,[2] I conclude that there is no genuine issue of material fact, and Shaw is entitled to judgment as a matter of law.

II

The following facts are either undisputed, or where disputed, are stated in the light most favorable to the plaintiff.[3]

---

[1] Wilson was represented by counsel through discovery.  Following the filing of Shaw's Motion for Summary Judgment and shortly before trial was scheduled to begin, Wilson's counsel moved to withdraw.  I allowed counsel to withdraw and granted Wilson additional time to hire new counsel or to file a pro se response to Shaw's motion.  This extended deadline has now passed, and no new attorney has entered an appearance on Wilson's behalf, nor has Wilson filed a response to the Motion for Summary Judgment.

[2] I have reviewed the Amended Complaint; Answer; transcript of Wilson's deposition; affidavit of Shaw's Human Resource Manager, James Lott; Wilson's employment application; an orientation information form dated May 24, 2010 containing Wilson's pay rate and her signature; George Gorsky's employment application; and Wilson's separation notice.

[3] When evaluating a motion for summary judgment, "a court must assess the factual evidence and all inferences to be drawn therefrom in the light most favorable to

Shaw provides, among other things, a variety of engineering and construction-related services at power plants. During the time period at issue in this case, it provided such services at the Virginia Hybrid Energy Center in St. Paul, Virginia. In May 2010, Wilson was hired to work at the St. Paul site as a "Helper 2" in the preventative maintenance group. Wilson had previously worked for Shaw at two other job sites. She knew that the open Helper 2 position paid significantly less than she had earned when she was last employed by Shaw at a different job site. She accepted the Helper 2 position at the St. Paul site with the understanding that she would be paid only $13.80 per hour.

On her employment application, Wilson checked a box indicating that she had no relatives who worked for Shaw. The application form broadly defined "relatives" to include persons not related by blood or marriage who live in the same household, as well as persons with whom the applicant has a relationship involving emotional or physical attraction. Wilson had previously been married to George Gorsky, who was working for Shaw as a foreman at the St. Paul site at the time that Wilson completed her application. Wilson's marriage to Gorsky had been annulled in 2009, prior to when she completed the employment application. Nevertheless, the home phone number Wilson listed on her application was the

---

the non-moving party." *Earley v. Marion*, 540 F. Supp. 2d 680, 684 (W.D. Va. 2008), *aff'd*, 340 F. App'x 169 (4th Cir. 2009) (unpublished).

same home phone number that Gorsky had listed on his own employment application approximately four months earlier. The employment application stated that providing false information on the application could be grounds for immediate termination.

Wilson alleges that although she was hired as a Helper 2, her experience and performance were at the level of a journeyman, which is a more senior position. According to Wilson, her supervisor, James Shackleford, told Wilson that she would receive a promotion to journeyman and accompanying wage increase on August 5, 2010.

However, on August 5, 2010, less than three months after hiring Wilson, Shaw terminated Wilson's employment. James Lott, the Human Resources Manager for Shaw's St. Paul project site, told Wilson that she was being fired because she had lied on her employment application in violation of company policy. Lott indicated that he had received two anonymous phone calls stating that Wilson and Gorsky were married. Lott reviewed Gorsky's employment application and noted that Gorsky had listed Wilson as his emergency contact. Lott also noted that Gorsky and Wilson had provided the same home phone number. Lott concluded that Wilson and Gorsky were either married or, at the very least, were living in the same household, which would make them "relatives" as defined on the employment application.

Gorsky was not terminated because, according to Shaw, Gorsky had not lied on his employment application, because Wilson had not been employed by Shaw at the time that Gorsky applied. When Wilson applied four months later, however, Gorsky was already working for Shaw.

Wilson told Lott that she and Gorsky were no longer married and offered to provide proof of annulment, but Lott refused to review any such documentation. Wilson later contacted a Shaw human resources representative in Baton Rouge, Louisiana, and again offered to provide proof of annulment. The human resources manager indicated that the company believed Wilson had lied on her application and that proof of annulment would not be needed.

Wilson alleges that two men were hired to replace her. One of the men she references was hired as a Helper 5, while the other was hired as a journeyman. At her deposition, Wilson stated that another Shaw employee told her these two men had taken over the work previously performed by Wilson, but she admitted that she did not know what their other duties were.

Wilson also avers that Shaw generally promoted men to journeyman status more quickly than women. She alleges that although Shaw had refused to pay her journeyman wages, it hired inexperienced males and paid them journeyman wages. At her deposition, Wilson could provide no evidence to support these allegations.

III

Summary judgment is appropriate where there is no genuine issue of material fact such that one party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rule 56 mandates the entry of summary judgment against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.* 477 U.S. at 322. Summary judgment is not "a disfavored procedural shortcut," but is an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Id.* at 327.

Title VII, among other things, prohibits an employer from discharging or otherwise discriminating against an individual with respect to her compensation or terms of employment because of her sex. 42 U.S.C.A. § 2000e-2(a)(1). Because Wilson offers no direct evidence of discrimination, her Title VII sex discrimination claim is analyzed under *McDonnell Douglas's* familiar burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). This framework requires the plaintiff to establish a prima facie case of discrimination by a preponderance of the evidence. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). A prima facie case of sex discrimination under Title

VII consists of four elements to be shown by the plaintiff: "(1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." *Lettieri v. Equant Inc.*, 478 F.3d 640, 646 (4th Cir. 2007) (internal quotation marks and citation omitted).

      If a prima facie case is presented, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* Assuming the employer meets its burden of production, the burden shifts back to the plaintiff to prove that the employer's stated reasons "'were not its true reasons, but were a pretext for discrimination.'" *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). At this point, the burden to demonstrate pretext "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256.

      As the Supreme Court has counseled, "[w]hether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports

the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Reeves*, 530 U.S. at 148-49.

Wilson has proffered sufficient evidence to establish a prima facie case of discrimination with respect to her termination. As a woman, she is a member of a protected class under Title VII. Her termination was clearly an adverse employment action. The evaluation she received on her separation notice indicates that her performance exceeded expectations. According to Wilson, Shaw replaced her with two male employees; according to Shaw, her position was not filled following her termination. Either scenario satisfies the fourth element of a prima facie case of discrimination.

Because Wilson has met her initial burden of production, the burden shifts to Shaw to offer a legitimate, non-discriminatory reason for why it terminated her. Shaw contends that it terminated Wilson's employment because it reasonably believed that Wilson had lied on her employment application, which is a violation of clearly established company policy. Shaw's proffered reason is legitimate and non-discriminatory; thus, Shaw has satisfied its burden of production.[4]

---

[4] Shaw has met its burden even if Lott was mistaken in his belief that Wilson and Gorsky were married or living together. "[W]hen an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether that reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 411 (7th Cir. 1997).

Wilson now has the burden of persuading this court that Shaw's proffered reason was mere pretext and that Shaw in fact terminated Wilson because of her sex. Wilson cannot meet this burden of persuasion. Wilson had been hired by Shaw just three months before she was terminated. If Shaw did not want a woman in that position, it likely would not have hired Wilson. Moreover, Wilson offers no evidence whatsoever that she was terminated because of her sex. In fact, at her deposition, Wilson admitted that Lott terminated her because he believed she was married to Gorsky and had lied on her application. Wilson's only purported evidence of sex discrimination is that she was fired and Gorsky was not. However, Wilson was not yet working for Shaw when Gorsky submitted his employment application. Therefore, as Wilson admitted at her deposition, Gorsky's statement on his application that he had no relatives who worked for Shaw was entirely truthful. Lott reasonably concluded that Wilson had lied on her application, while Gorsky had not lied on his application.

With respect to her claim of wage discrimination, Wilson cannot satisfy her initial burden of production, as she cannot establish that she received unequal pay. The record shows that Wilson applied for a Helper 2 position, not a journeyman position, and that she knew at the outset the wage that she would be paid. The record is devoid of any comparator evidence showing that similarly situated males earned more that Wilson. Additionally, there is no evidence that Wilson was

considered and passed over for a raise.  She had worked for Shaw for a mere three months before she was terminated.  I cannot conclude that she was entitled to any promotion or wage increase in such a short time; the record simply does not support such a conclusion.  Because the undisputed facts are insufficient to satisfy the elements of sex-based discrimination under Title VII, Wilson's Title VII claim must fail as a matter of law.

Wilson's VHRA claim is not viable either.  First, the VHRA only creates a private cause of action against employers with more than five but fewer than fifteen employees.  Va. Code Ann. § 2.2-3903(B).  Wilson does not dispute that Shaw employs more than fifteen people.  Second, even if the VHRA applied here, Wilson could not prove sex-based discrimination for the reasons stated above.  Wilson's VHRA also must fail as a matter of law.

### IV

For the foregoing reasons, the defendant's Motion for Summary Judgment will be granted and judgment consistent with this Opinion will issue forthwith.

DATED:  December 10, 2012

/s/  James P. Jones  
United States District Judge